

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LIHUA JIANG,

                        Plaintiff,

       -against-

HILLARY CLINTON, *as United States Secretary of State*,
JANET NAPOLITANO, *as Secretary of the United States
Department of Homeland Security*, MICHAEL AYTES, *as
Acting Director of the United States Citizenship and
Immigration Service ("CIS")*, PAUL NOVAK, *as Director
of CIS Vermont Service Center*, ANDREA
GUARANTILLO, *as Director of CIS New York District
Office*, U.S. AMBASSADOR TO THE PEOPLE'S
REPUBLIC OF CHINA, ROBERT GOLDBERG, *as
Consular General of the Guangzhou Consulate*,
DIRECTOR OF THE NATIONAL VISA CENTER,

                        Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-4477 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Lihua Jaing, a permanent resident of the United States, brings suit against United States Secretary of State Hillary Clinton, Consular General of the Guangzhou Consulate Robert Goldberg, the currently vacant offices of the United States Ambassador to the People's Republic of China and Director of the National Visa Center (collectively, "The State Department Defendants"), Secretary of the Department of Homeland Security Janet Napolitano, Acting Director of the United States Citizenship and Immigration Services ("CIS") Michael Aytes, Direct of CIS Vermont Center Paul Novak, and Direct of CIS New York District Office Andrea Guarantillo (collectively, "The DHS Defendants"). Plaintiff asks the court to issue a writ of mandamus ordering the DHS Defendants to process her I-824 application on behalf of her son

1

and ordering the State Department Defendants to grant her son a visa to enter the United States. (First Am. Compl. (Docket Entry # 11) at 9-10.)

Defendants now move for dismissal for lack of subject matter and failure to state a claim for which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Def's Mem. in Supp. of Mot. to Dismiss (Docket Entry # 29).) Plaintiff opposes Defendants' motion and moves for leave to file a Second Amended Complaint. (Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl. (Docket Entry # 23).)

For the reasons set forth below, Defendants' Motion is GRANTED, and Plaintiff's Motion is DENIED.

## I. BACKGROUND

Plaintiff is a Chinese national who has lived and worked in New York City for many years. (See Ex. A to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) On October 27 2003, Plaintiff was issued an Employment-Based Third Preference ("EB-3") visa. (See Ex. C to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) On December 20, 2004, Plaintiff became a Lawful Permanent Resident ("LPR"). (See Ex. B to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) On January 5, 2005, Plaintiff filed an Application on an Approved Application or Petition with the CIS as the first step in the process of arranging a visa for her adult son, who was living in China. (Ex. C to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) What followed was, according to Plaintiff, several years of confusion and uncertainty, as no one in CIS could tell Plaintiff about the status of her application on behalf of her son. (See Exs. D, E, F, I to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) Plaintiff finally filed suit against the DHS

2

Defendants in 2008, asking the court to issue a writ of mandamus ordering the adjudication of the application on behalf of her son. (Compl. (Docket Entry # 1).)

Although Plaintiff did not know this at the time, CIS approved the application on August 2007 and forwarded it to the National Visa Center, a section of the State Department.[1] (Ex. J to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) After Plaintiff filed this suit and learned that the application had been forwarded to the National Visa Center, she attempted to track the application's progress, but had difficulty. (See Ex. L to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) Plaintiff amended her Complaint to include the State Department Defendants and to ask the court to issue a writ of mandamus ordering those defendants to issue or deny her son's visa. (Am. Compl.) In February 2009, consular officials in Guangzhou, China, contacted Plaintiff's son and suggested that he was not eligible for a visa but that he should be given the chance to submit additional information. (Ex. P to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.)

Finally, in October 2009, the consulate denied a visa to Plaintiff's son. (Ex. R to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) The consular officials concluded that Plaintiff's son was no longer eligible for a visa based on his mother's status, because "the term 'child' means an unmarried person under twenty-one years of age" and Plaintiff's son is older than twenty-one. See 8 U.S.C. § 1101(b)(1) ). Plaintiff argues that her son should be treated as if he were under the age of twenty-one, because a determination of whether an alien is under twenty-one years of age "shall be made using the age of the alien on . . . the date on which an immigrant visa number became available for the alien's parent[], but only

---

[1] Once the Department of Homeland Security, through CIS, approves an application for an immigration benefit, the application must be forwarded to the State Department and on to the officials in a consulate located in the putative immigrant's country for issuance or denial of a visa. 8 C.F.R. § 204.2(d)(3) ("The approved petition will be forwarded to the Department of State's Processing Center."); 8 U.S.C. § 1201(a)(1) (". . . a consular official may issue . . . an immigrant visa . . . .").

3

if the alien has sought to acquire the status of an alien lawfully admitted for permanent resident within one year of such availability " and Plaintiff filed the application on behalf of her son when he was twenty years of age. 8 U.S.C. § 1153(h)(1)(A). The consulate, however, concluded that Plaintiff needed to file the application on behalf of her son within one year of Plaintiff receiving the EB-3 visa (i.e., by October 2004) to claim the protection of the statute; since Plaintiff waited until she received LPR status, she waited too long to claim the protection of the statute. (Ex. R to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.)

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction. When considering a 12(b)(1) motion, the court takes as true the factual allegations in the complaint, but does not draw inferences favorable to the party asserting jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The court may also look beyond the complaint to such things as affidavits or other documents. See Kamen v. AT&T, 791 F.2d 1006, 1011 (2d Cir. 1986). A district court should dismiss a claim for lack of subject matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d cir. 2000). Because subject matter jurisdiction is a necessary predicate for a federal court to act, the court must consider whether it has subject matter jurisdiction before considering a motion to dismiss for failure to state a claim. See, e.g., Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-96 (1998).

When considering a motion to dismiss for failure to state a claim for which relief can be granted, a court should assume all the facts the plaintiff alleges to be true and construe the

4

complaint in the light most favorable to the plaintiff. See in re Specialists Sec. Litig., 503 F.3d 95 (2d Cir. 2007). However, a claim must be more than a mere recitation of the elements of a cause of action or series of legal conclusions. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). The complaint instead must provide enough factual content that, when taken as true, would allow a court to draw a "reasonable inference" that the plaintiff is entitled to relief. Id. at 1949. This means that a claim for relief must be plausible; it must raise more than "the mere possibility of misconduct" by a defendant. Id. at 1949-50.

**B. Mandamus to process application and visa**

Plaintiff seeks a writ of mandamus to compel the DHS Defendants to process her application in support of her son's visa, and to compel the State Department Defendants to grant or the deny the visa. Mandamus is only appropriate where defendants have a nondiscretionary duty to act. See Heckler v. Ringer, 466 U.S. 602, 616 (1984). Plaintiff argues that DHS officials have a nondiscretionary duty to process immigration applications like her application on behalf of her son, and similarly that consular officials have a duty to grant or deny visas when someone like her son applies for one. (See First Am. Compl. at 5-6.) The court does not consider the question of whether mandamus lies against officials in these contexts because the two sets of officials have now acted to process the application and the visa respectively. DHS approved her application in 2007 (Ex. A. to Def's Letter Mot. to Dismiss (Docket Entry # 9), and the consulate denied her son's visa request in 2009 (Ex. R to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.). Both of these processes took longer than Plaintiff preferred—and perhaps longer than the law permits—but the processes did occur and were eventually completed. Defendants discharged any non-discretionary duty they may have owed to Plaintiff and her son. Plaintiff's claim is thus moot insofar as it seeks a writ of mandamus to order Defendants to

5

perform duties they have already performed. Since a federal court lacks subject matter jurisdiction over moot issues, See Altman v. Bedford Cent. School Dist., 245 F.3d 49, 70 (2d Cir. 2001), the moot petition for a writ of mandamus must be dismissed for lack of subject matter jurisdiction.

### C. Damages

Plaintiff also seeks damages in her First and putative Second Amended Complaints. A damages claim is of course not mooted by Defendants' subsequent actions. Plaintiff's Amended Complaint does not make clear what entity should be liable for the damages Plaintiff seeks, nor what cause of action might impose damages for the events Plaintiff alleges. However, Plaintiff has styled her suit against Defendants in their official capacities; therefore, the court concludes that Plaintiff is seeking damages against the United States, the real party in interest where its officials are sued in their official capacities.[2] See Kentucky v. Graham, 473 U.S. 159, 169 (1985) (noting that "a judgment against a public servant in his official capacity imposes liability on the entity he represents" (internal quotations and citations removed)). Since the United States is the real party in interest, Plaintiff's request for damages is confronted by the barrier of sovereign immunity. See id. at 167 ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess.") However, Plaintiff does not even attempt to fit her case within one of the statutory waivers of the United States' sovereign immunity; for example, she does not allege that she has filed an

---

[2] Plaintiff has taken multiple actions that further indicate the idea that her claim is against Defendants in their official capacities only. When new Secretaries of State and Homeland Security were appointed, Plaintiff substituted those new secretaries in her caption and has not attempted to keep the outgoing office-holders as Defendants. Moreover, Plaintiff does not allege any facts to suggest that Secretary of State Hillary Clinton and Secretary of Homeland Security Janet Napolitano should be liable personally for actions that were primarily taken before they were appointed to their current positions. See, eg., Secretary of State Hillary Rodham Clinton Biography, U.S. Department of State, http://www.state.gov/secretary (last visited Nov. 22, 2011) (stating that Clinton was sworn in as Secretary on January 21, 2009). Plaintiff also lists two vacant offices among her Defendants, and offers no reason why the eventual appointees to those offices should be personally liable for damages inflicted before they began at those positions.

6

administrative claim, a statutory prerequisite for a Federal Tort Claims Act suit. See 28 U.S.C. § 2675. Since Plaintiff does not allege that her claim fits into any statutory waiver of sovereign immunity, her damages claim must be dismissed for lack of subject matter jurisdiction. See F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).

### D. Review of Denial of Visa

Plaintiff seeks to maintain a live controversy even after consular officials denied her son's visa application, by seeking leave to amend her Complaint to include a request for this court to review the accuracy of that determination. Courts should give leave to amend freely. Fed. R. Civ. P. 15(a)(2). However, a court may deny leave when there are grounds to do so, such as futility. Mackensworth v. S.S. American Merchant, 28 F.3d 246, 251 (2d Cir. 1994). As Defendants correctly contend, the doctrine of consular non-reviewability generally bars the court from reviewing the denial of Plaintiff's son's visa application. Consular officers are vested with the exclusive power to issue or deny visas. 8 U.S.C. § 1101(a)(9), (16); 8 U.S.C. § 1201(a). The consular non-reviewability doctrine refers to the "principle that a consular officer's decision to deny a visa is immune from judicial review." Am. Acad. of Religion v. Napolitano, 73 F.3d 115, 123 (2d Cir. 2009). Where a party seeks judicial review of a visa denial, the complaint must be dismissed for lack of subject matter jurisdiction. See, e.g., Yu Chu Hom v. Goldbeck, 08-CV-3159 (SLT), 2010 WL 2265054, at * 3 (E.D.N.Y. May 28, 2010) ("The Court does not have subject matter jurisdiction to review Chen's claims regarding the Guangzhou Consulate's visa denial."). The Court is barred from reviewing consular decisions even in cases in which the foundation of the decision was erroneous, arbitrary, or contrary to agency regulations. Ngassam v. Chertoff, 590 F.Supp.2d 461, 466-67 (S.D.N.Y. 2008).

7

Typically, a plaintiff cannot circumvent this doctrine by challenging the underlying basis for the denial. See Al Makaaseb Gen. Trading Co., Inc. v. Christopher, 94-CV-1179 (CSH), 1995 WL 110117, at *3 (S.D.N.Y. Mar. 13, 1995). Nor can a plaintiff avoid the doctrine of consular non-reviewability by citing to the APA or the writ of mandamus. Courts have consistently rejected this argument. See, e.g., Romero v. Consulate of U.S., Barranquilla, Colombia, 860 F.Supp. 319, 324 (E.D. Va. 1994) ("The APA provides no implied grant of subject matter jurisdiction to review consular decisions."); Al Makaaseb Gen. Trading Co., 1995 WL 110117, at *4 n.2 (citing Romero); Yu Chu Hom v. Goldbeck, 2010 WL 2265054, at * 3 (dismissing mandamus action regarding Guangzhou Consulate's visa denial for lack of subject matter jurisdiction). To the extent that Plaintiff's Second Amended Complaint would seek review of the consulate's decision because it was contrary to law or arbitrary, such Amended Complaint would be dismissed for lack of subject matter jurisdiction, and thus the motion to amend is denied for futility.

Plaintiff asks the court to ignore this doctrine because, she claims, she is alleging violations of her constitutional rights. (Pl.'s Reply Mem. in Opp. to Mot. to Dismiss (Docket Entry 31) at 2-3.) The Second Circuit has recognized an exemption to the doctrine of consular non-reviewability where American citizens allege that a visa denial violates their First Amendment rights. Am. Acad. of Religion, 573 F.3d at 125 (Taking jurisdiction "where a plaintiff, with standing to do so, asserts a First Amendment claim to have a visa applicant present views in this country . . . .") Although Plaintiff is not an American citizen, she is a permanent resident and possesses many of the same constitutional rights as a citizen. See, e.g., Mathews v. Diaz, 426 U.S. 67, 77 (1976). This is in contrast to her son, who as a non-admitted, not-physically present alien, does not have a constitutional right to a visa or proper adjudication of

8

his claim to one. See Kleindienst v. Mandel, 408 U.S. 753, 762 (1972). The circuit's opinion in American Academy did not state whether consular non-reviewability applies when a plaintiff claims that a constitutional right other than free speech has been violated. However, at least one circuit court of appeals has considered the merits of a visa denial when an American plaintiff alleged that the denial violated her due process rights. See Bustamante v. Mukasey, 531 F.3d 1059, 1062 (9th Cir. 2008). The Second Circuit cited Bustamante with approval in American Academy, See 573 F.3d at 124. This suggests that American Academy's holding—that consular non-reviewability does not apply to constitutional claims—is true of all constitutional claims. Moreover, Defendants offer no principled reason why First Amendment rights should be privileged over other constitutional rights. Therefore, the court concludes that consular non-reviewability is not applicable when any plaintiff who possesses cognizable constitutional rights alleges that a visa denial implicated those rights. The court would have subject matter jurisdiction over the claims in Plaintiff's Second Amended Complaint to the extent it raises constitutional claims.

It is not clear from Plaintiff's Second Amended Complaint which, if any, of her constitutional rights were violated; however, in her memorandum of law, she argues that her procedural and substantive due process rights and equal protection rights were violated. Plaintiff claims she has a due process right to a relationship with her child—one with which the government is interfering. (Pl.'s Reply Mem. in Opp. to Mot. to Dismiss at 2-3.) As supposed support for such claims, she cites to Supreme Court opinions that have held that the parents or guardians of minor children have protected interests in the care, control, and custody of those children. See Troxel v. Grandville, 530 U.S. 57, 65-66 (2000) (plurality opinion); Moore v. City of East Cleveland, 431 U.S. 494, 505-06 (1977) (plurality opinion); Pierce v. Soc'y of Sisters,

9

268 U.S. 510, 534-35 (1925); Meyer v. Nebraska, 262 U.S. 390, 399 (1923). Plaintiff's own case, however, is different. Her son was twenty years old, and thus an adult, at the time Plaintiff first filed the application seeking a visa for him. (See Ex. C to Pl.'s Opp. to Mot. to Dismiss and Cross-Mot. for Second Am. Compl.) Plaintiff seems to be implying that a mother has a liberty interest in the physical presence of her adult son, but offers no argument in support of that suggestion. Multiple courts of appeal have held that adult children and parents do not have a constitutionally protected interest in their relationship. See, e.g., Butera v. District of Columbia, 235 F.3d 637, 656 (D.C. Cir. 2001) (holding that a "parent does not have a constitutionally protected liberty interest in the companionship of a child who is past minority and independent"); see also Russ v. Watts, 414 F.3d 783, 787-88 (7th Cir. 2005) (collecting cases). Given that the Supreme Court's opinions emphasize a liberty interest in the care and custody of minor children, this court agrees with the cited opinions and concludes that Plaintiff has no constitutionally protected right to the physical presence of her adult son. Thus, Plaintiff's Second amended Complaint fails to state a claim for a violation of Plaintiff's due process rights.

Once Plaintiff's due process claim fails, her equal protection claim must fail as well. Without a constitutionally protected interest in an unfettered relationship with her adult son, Plaintiff has no interest in the outcome of the visa proceeding. It is Plaintiff's son's rights, not Plaintiff's, that are being acted upon by the State Department Defendants. Thus, Plaintiff cannot allege that she is being treated adversely—because she is not being treated at all. Plaintiff cannot make out an equal protection claim where her rights are not subject to treatment by the government. See, e.g., Ross v. Moffitt, 417 U.S. 600, 609 (1974) ("'Equal Protection' . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable" (emphasis added)); Village of Willowbrook v. Olech, 528 U.S. 562,

10

564 (plaintiff had "been intentionally treated differently from others similarly situated and [] there [wa]s no rational basis for the difference in treatment" (emphasis added)). Plaintiff's Amended Complaint fails to state a claim for an equal protection violation.

Because Plaintiff's Second Amended Complaint fails to allege constitutional injuries for which relief could be granted, amendment would be futile.

III. CONCLUSION

Plaintiff's motion to amend is DENIED as futile. Defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED. The Clerk of Court is directed to close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
November 23, 2011

NICHOLAS G. GARAUFIS
United States District Judge

11